FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 17 2015 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JEAN DORMEVIL,

                           Plaintiff,

    -against-

ELLIOT GANTZ & COMPANY, INC.,

                          Defendants.
------------------------------------------------------------------X

CV:
**CV-15 6585**
COMPLAINT
**JURY TRIAL DEMANDED**
FEUERSTEIN, J
TOMLINSON, M

Plaintiff, Jean Dormevil, by his attorneys SCOTT MICHAEL MISHKIN P.C., complaining of the defendant, alleges as follows:

### PRELIMINARY STATEMENT

This case is brought for a money judgment for actual, punitive, compensatory and emotional damages suffered by Jean Dormevil ("Plaintiff"), as a result of Defendant's discriminatory and retaliatory adverse treatment against Plaintiff based on Plaintiff's disability in violation of 42 U.S.C. §§ 12111 et seq., the Americans With Disabilities Act (ADA).

### JURISDICTION

FIRST:        The jurisdiction of the Court over this controversy is based upon 28 U.S.C. §1331, as this matter is raised under the ADA, 42 U.S.C. §§ 12101 *et seq.*

1

## VENUE

SECOND: The unlawful practices alleged below were committed within Suffolk County in the Eastern District of the State of New York.

THIRD: At the time of the unlawful practices, plaintiff was a resident of Suffolk County in the Eastern District of the United States District Court of New York.

FOURTH: Defendant Elliot Gantz & Company, Inc. ("Defendant"), conducted business at its facility in Farmingdale, New York, in the Eastern District of the United States District Court of New York.

FIFTH: This court is hereby the proper venue under 28 U.S.C. §1391(b).

## PARTIES

SIXTH: Plaintiff has a "disability" as defined in the ADA §12102 (2) in that he was physically impaired due to a shoulder injury he suffered while on the job at Defendant.

SEVENTH: Plaintiff was an "employee" as defined by the ADA.

EIGHTH: At all times relevant to this action, Defendant was the "employer" of Plaintiff as defined by the ADA, until he was wrongfully terminated on June 26, 2015.

## FACTS

NINTH: Defendant is a fine art bronze sculpture casting company located in Farmingdale, New York.

TENTH: Elliot Gantz ("Gantz") is the owner and President of Defendant.

ELEVENTH: Plaintiff began his employment with Defendant in July 2012 as a Mold Maker.

TWELVTH:  Plaintiff's responsibilities included making rubber molds out of an artists' original work in order to make a replica of the work.

THIRTEENTH:  During all relevant times of this complaint, Plaintiff was a member of a protected class under the ADA, in that he is an individual with a qualified disability in that he suffers from a shoulder injury which he incurred while working at Defendant, and had requested reasonable accommodations for said disability.

FOURTEENTH:  Plaintiff was very successful at his job and consistently received good reviews and praise for his work and expertise.

FIFTEENTH:  On or about Wednesday, March 26, 2014, Gantz, who was out of the office, contacted Brian, the Manager at Defendant, and stated that the art piece that Plaintiff was working on needed to be finished by Friday because the client was coming in to view and inspect the work.

SIXTEENTH:  This particular piece was a woodwork piece and Plaintiff advised Gantz and his Manager, Brian, that he would need two other helpers to finish this job by Friday. Therefore, Brian and another co-worker Edmond Vernier assisted in the completion of the job.

SEVENTEENTH:  When Plaintiff had started working on this particular piece, he told Gantz that the work had to be done in two pieces, but Gantz said no.

EIGHTEENTH:  On March 27, 2014, with aid of the two helpers, Plaintiff poured the rubber on one side of the mold.  The following day, Plaintiff tried to open the mold and flip it to the other side, but the wood had absorbed all the rubber and the mold was a total loss.  Brian stated that the wood piece had to be saved or else Defendant would get sued by the client.

NINETEENTH:  Therefore, on March 28, 2014, in trying to save the wood piece, Plaintiff injured his shoulder by pulling out all the rubber that was soaked into the wood.

TWENTIETH: After successfully saving the wood piece, Plaintiff reported to his Manager, Brian, that he had to leave work early that day due to the pain he felt in his shoulder.

TWENTY-ONE: On Monday, March 31, 2014, Plaintiff reported to Brian that he was still in significant pain, and Brian responded to him to not work too hard and to do what he could do.

TWENTY-TWO: The next day, April 1, 2014, still in intense pain, Plaintiff reported that he was going to see a doctor about his shoulder. Brian gave Plaintiff the company insurance card to use when he sought medical treatment that day.

TWENTY-THREE: Plaintiff went to the emergency room and was diagnosed with a ligament tear in his right shoulder, and his arm was put in a sling.

TWENTY-FOUR: On April 2, 2014, Plaintiff submitted his hospital discharge papers to Defendant, and continued to work that day using only his left hand.

TWENTY-FIVE: Because the job had to be done, and Defendant seemingly did not care what had to be done to finish the job, Plaintiff continued to work on April 3, and went back to work April 7 and 8 so that the job could be completed.

TWENTY-SIX: On April 8, 2014, while at work, Plaintiff informed Defendant that he had to leave early to get to his doctor's appointment. Defendant asked him to return back to work after the appointment.

TWENTY-SEVEN: While he was at the doctor's appointment, Defendant repeatedly called Plaintiff. When he was able, Plaintiff returned the call to say he would be back after his appointment.

TWENTY-EIGHT: After the appointment, Plaintiff returned to work, and submitted his request for reasonable accommodation in the form of a doctor's note, dated April 8, 2014, which stated that he was to be out of work and that he would be re-evaluated on April 22, 2014.

TWENTY-NINE: The next day, April 9, 2014, Defendant called Plaintiff into work for the next day to give verbal instruction to other employees on how to do his work.

THIRTY: Plaintiff did go into work on April 10, 2014 as requested. Defendant then asked him to return again on April 15, 2014. However, Plaintiff received a call from Defendant the day before telling him to stay home and not come in to work the next day.

THIRTY-ONE: Upon information and belief, Defendant read Plaintiff's doctor's note which advised that Plaintiff not return to work due to his injury.

THIRTY-TWO: On April 22, 2014, Plaintiff submitted his most recent doctor's note to Defendant stating that he was not cleared to work until at least four weeks until he was re-evaluated.

THIRTY-THREE: On May 20, 2014, Plaintiff also submitted to Defendant, his next doctor's note stating that he was not to return to work for another two weeks pending a re-evaluation.

THIRTY-FOUR: On June 3, 2014, Plaintiff submitted his next doctor's note, which called for him to still be out of work for four more weeks. This would be until on or around July 3, 2014.

THIRTY-FIVE: Finally, on June 25, 2014, Plaintiff saw his doctor again to be re-evaluated. Plaintiff's doctor cleared Plaintiff to return to work light duty as of July 8, 2014 for six weeks. This doctor's note was also immediately submitted to Defendant.

THIRTY-SIX: The very next day, June 26, 2014, Plaintiff was wrongfully terminated by Defendant via letter stating the reason for the termination is because Plaintiff did not contact Defendant regarding his return to work.

THIRTY-SEVEN:   On August 20, 2014, Plaintiff filed a complaint with the New York State Division of Human Rights alleging discrimination due to his disability and the denial of reasonable accommodations.  He also filed a Charge directly with the Equal Employment Opportunity Commission on April 8, 2015 alleging disability discrimination and retaliation.

THIRTY-EIGHT:   Upon information and belief, in Defendant's response to Plaintiff's New York State Division of Human Rights complaint, Defendant completely fabricates a story that it had not heard from Plaintiff as to a prospective return to work, even though Plaintiff had actually submitted his June 25, 2014 doctor's note stating that he could return light duty as of July 8, 2014.

THIRTY-NINE:   In fact, in it's excuses provided in response to Plaintiff's complaint, Defendant even mentions that it had no information on when Plaintiff's leave would end, but also attached a copy of the termination letter dated June 26, 2014 which references receiving the "latest correspondence from your doctor noting that you could return to light duty work."

FORTY:   This June 26, 2014 doctor's note also specified that the light duty would only be for six more weeks.  However, Defendant chose, instead, to terminate Plaintiff's employment.

## AS AND FOR A FIRST CAUSE OF ACTION - DISCRIMINATION BASED UPON DISABILITY IN VIOLATION OF ADA

FORTY-ONE: Plaintiff repeats and re-alleges those facts and allegations set out in paragraph ONE through and including paragraph FORTY as if fully set forth herein.

FORTY-TWO: Plaintiff was an individual protected by the ADA in that he had a debilitating right shoulder injury which interfered with his daily tasks as he could not use his right arm.

FORTY-THREE: Plaintiff was directly discriminated against he was treated adversely compared to his similarly situated co-workers that were not injured, in that he was terminated as a direct result of his injury.

FORTY-FOUR: Defendant discriminated against Plaintiff due to his disability by denying him a reasonable accommodation of light duty for a set period of six weeks.

FORTY-FIVE: Granting Plaintiff temporary light duty work and/or time off would not financially harm Defendant, and was a reasonable accommodation request.

FORTY-SIX: As such, Defendant's discriminated against Plaintiff due to his disability and his use of time off/medical leave as a reasonable accommodation, in violation of the ADA.

## AS AND FOR A SECOND CAUSE OF ACTION - RETALIATION BASED UPON REQUESTS FOR REASONABLE ACCOMMODATION IN VIOLATION OF ADA

FORTY-SEVEN: Plaintiff repeats and re-alleges those facts and allegations set out in paragraph ONE through paragraph FORTY-SIX as if fully set forth herein.

FORTY-EIGHT: Defendant terminated Plaintiff's employment the day after it received Plaintiff's doctor's note indicating a date to return to work with a reasonable accommodation of temporary light duty.

FORTY-NINE: The temporal proximity between Plaintiff's time taken as a medical leave, and his impending return to work date as compared to the date of Plaintiff's termination (the next day), leads to a reasonable inference that those acts were the direct cause of Plaintiff's termination.

FIFTY: Defendant's act of terminating Plaintiff on the heels of being medically cleared to return to work with a reasonable accommodation is such that a reasonable person would be deterred from taking necessary medical leave when sick or injured.

FIFTY-ONE: Defendant falsely represents that Plaintiff did not keep in touch with it during his medical leave, which is a complete fabrication, as Plaintiff consistently provided all of his doctor's notes to Defendant, including the June 25, 2014 note that indicated a return to work date.

FIFTY-TWO: Another fabrication by Defendant in it's Response to Plaintiff's New York State Division of Human Rights complaint was where it states that it made every attempt to determine whether a reasonable accommodation could be provided, when in reality, it fired Plaintiff the day after they received Plaintiff's doctor's reasonable accommodation request that he could return to work light duty for six weeks.

FIFTY-THREE: At no time did Defendant ever discuss a light duty schedule with Plaintiff, and instead took the adverse employment action against Plaintiff and terminated him in retaliation for his use of time off as a reasonable accommodation.

FIFTY-FOUR:   The excuses Defendant gives for terminating Plaintiff are pretext, and the true reason was unlawful retaliation against him for his requests of a reasonable accommodation for his disability and his use of time off to heal.

FIFTY-FIVE: Prior to filing this civil action, Plaintiff timely filed a written charge asserting discrimination based on disability and retaliation within three hundred (300) days of the discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC").

FIFTY-SIX: Plaintiff has filed this action prior to the expiration of ninety (90) days after receiving his Notice of Right to Sue from the EEOC.

WHEREFORE, Plaintiff demands a judgment against the Defendant as follows:

1. For a money judgment representing actual damages for Defendant's discrimination against Plaintiff due to his disability in violation of the ADA, in an amount to be determined by a jury;

2. For a money judgment representing compensatory damages for Defendant's discrimination against Plaintiff due to his disability in violation of the ADA, in an amount to be determined by a jury;

3. For a money judgment representing emotional damages for Defendant's discrimination against Plaintiff due to his disability in violation of the ADA, in an amount to be determined by a jury;

4. For a money judgment representing punitive damages for Defendant's discrimination against Plaintiff due to his disability in violation of the ADA, in an amount to be determined by a jury;

5. For a monetary judgment of actual damages against Defendant for its retaliation against Plaintiff in violation of the ADA.

6. For a monetary judgment of compensatory damages against Defendant for its retaliation against Plaintiff in violation of the ADA;

7. For a monetary judgment of emotional damages against Defendant for its retaliation against Plaintiff in violation of the ADA;

8. For a monetary judgment of punitive damages against Defendant for its retaliation against Plaintiff in violation of the ADA;

9. For equitable and injunctive relief;

10. For attorney's fees and costs; and

11. For such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this action.

Dated: Islandia, New York
November 16, 2015

SCOTT MICHAEL MISHKIN, P.C.

By: Kathleen A Tirelli, Esq.
One Suffolk Square, Suite 240
Islandia, New York 11749
Tel: (631)-234-1154
Fax: (631)-234-5048